986 F.2d 257
 Richard T. DAWSON; Kenneth E. Gordon; George Segler;
Kline E. Goeders; Troy P. Shearon, Plaintiffs-Appellees,
v.
David SCURR; Terry Branstad; Paul Hedgepeth; Paul
Grossheim; Jack Pascal; Earl Willits; Charles
Lee; John Sissel; Crispus Nix; Gary
Baugher, Defendants-Appellants.
Richard T. DAWSON; Plaintiff,
Kenneth E. Gordon; George Segler; Kline E. Goeders; Troy
P. Shearon, Plaintiffs-Appellants,
Tyrone Pierce, Intervenor-Appellant,
v.
David SCURR; Terry Branstad; Paul Hedgepeth; Paul
Grossheim; Jack Pascal; Earl Willits; Charles
Lee; John Sissel; Crispus Nix; Gary
Baugher, Defendants-Appellees.
Richard T. DAWSON; Kenneth E. Gordon; George Segler;
Kline E. Goeders; Troy P. Shearon, Plaintiffs-Appellees,
Tyrone Pierce; Intervenor-Appellee,
v.
David SCURR; Terry Branstad; Paul Hedgepeth; Paul
Grossheim; Jack Pascal, Defendants-Appellants,
Earl Willits, Defendant,
Charles Lee; John Sissel; Crispus Nix; Gary Baugher;
James Helling; Donald Lynch, Defendants-Appellants.
 Nos. 91-3755, 91-3778 and 92-1702.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 9, 1992.
Decided Feb. 23, 1993.
Rehearing and Rehearing En Banc
Denied April 5, 1993.
 
 Robin A. Humphrey, Des Moines, IA, argued, for defendants-appellants.
 Philip B. Mears, Iowa City, IA, argued, for plaintiffs-appellees.
 Before RICHARD S. ARNOLD, Chief Judge, LAY, Senior Circuit Judge, and LOKEN, Circuit Judge.
 LAY, Senior Circuit Judge.
 
 
 1
 Inmates at the Iowa State Penitentiary (ISP) in Fort Madison, Iowa, challenged the constitutionality of Iowa prison regulations relating to the right of inmates to possess certain sexually explicit material in their cells. The district court, based upon the magistrate judge's recommendation, enjoined the prison authorities[1] from enforcing the rule. The court awarded plaintiffs' reasonable attorney fees, but denied plaintiffs' other requested relief. The defendants have appealed the issuance of the injunction; the inmates have cross-appealed urging that the defendants should be held in contempt and seek damages. We reverse and order the injunction vacated; in addition, we vacate the award of attorney fees.
 
 I.
 
 2
 Iowa Admin.Code R. 291-20.6(4), as it existed in 1981, barred prison inmates from receiving many sexually explicit publications.[2] Seven inmates sued various prison and government officials, arguing that the rule violated the First Amendment. In September 1988, the district court, adopting the report and recommendation of the magistrate judge, found that Rule 20.6(4) was unconstitutional. The court reasoned that the regulation was overbroad, vague, and subject to inconsistent application; moreover, prison officials had not demonstrated the rule protected any significant interest in prison security. The district court therefore enjoined enforcement of the rule. See Dawson v. Scurr, No. 81-373-D (S.D.Iowa Sept. 6, 1988) (Dawson I ). Defendants did not appeal.[3]
 
 
 3
 In December 1988, the Iowa Board of Corrections promulgated a new regulation, Iowa Admin.Code R. 291-20.6(4)-(6). Rule 20.6(4) provided that prison officials could exclude publications which portrayed, inter alia, child sex acts, sadomasochism or bestiality. Rule 20.6(5) provided that inmates found psychologically unfit could be denied access to sexually explicit materials.[4] Finally, Rule 20.6(6) limited inmate access to publications portraying "fellatio, cunnilingus, masturbation, ejaculation, sexual intercourse or male erection" to a "designated controlled area" (the reading room).[5]
 
 
 4
 Following promulgation of this new rule, publication review committee members screened publications ordered by inmates and decided whether to allow, control or deny a publication. Publications which were allowed were permitted in inmates' cells; these publications might contain sexually explicit material, but not depictions described in Rule 20.6(6). Publications which were controlled were those which contained depictions described in Rule 20.6(6); these could be viewed only in the reading room. Finally, publications which were denied (those containing child sex acts or bestiality, for example) were banned altogether.
 
 
 5
 In 1988, when the new rule went into effect, the Iowa State Penitentiary in Fort Madison had some 450 inmates. Around 150 of them were screened to determine fitness for receipt of sexually explicit materials. Seven of those inmates were found unfit.
 
 
 6
 For those found psychologically fit, the Iowa State Penitentiary provides a reading room for viewing controlled materials. The room, one of the attorney-client visiting areas, is approximately six feet wide by eight feet long. Before entering the reading room, inmates are strip searched; they receive their publication in a brown paper bag, then walk through a general visitation area into the reading room. There is a window between the visiting room and the reading room. Inmates are allowed to use the reading room only when the visiting room is open to the public and only for 30 minutes at a time. Publications are retained for three months, after which the inmate must either send the material out of the prison or allow it to be destroyed. Finally, masturbation is prohibited in the reading room.
 
 
 7
 Five inmates, all of whom were found psychologically fit to view sexually explicit material, challenged the new rule.[6] They argued that (1) res judicata principles precluded relitigating the issue of inmate access to sexually explicit materials because of the injunction in Dawson I; (2) by promulgating the new rule, defendants violated the injunction in Dawson I and should be found in contempt; and (3) the new rule was constitutionally invalid under the test set out in Thornburgh v. Abbott, 490 U.S. 401, 414-19, 109 S.Ct. 1874, 1881-84, 104 L.Ed.2d 459 (1989); thus, enforcement of the rule should be enjoined, and plaintiffs should receive money damages.
 
 
 8
 The district court, adopting the magistrate's report and recommendation, enjoined enforcement of Rule 20.6(6), but not Rules 20.6(4) or 20.6(5). The court refused, however, to apply issue preclusion, holding the initial claim for relief was not the same request for money damages for contempt of the original injunction. Pursuant to 42 U.S.C. § 1988, the judge ordered defendants to pay reasonable attorney fees.
 
 II.
 A. Constitutionality of Rule 20.6(6)
 
 9
 The law is settled that prison regulations which restrict an inmate's access to publications are constitutionally valid if they are "reasonably related to legitimate penological interests." Thornburgh v. Abbott, 490 U.S. 401, 404, 109 S.Ct. 1874, 1876, 104 L.Ed.2d 459 (1989). In determining the reasonableness of a prison regulation, this court must consider: (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether obvious, easy alternatives exist. See Turner v. Safley, 482 U.S. 78, 89-91, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987); Thornburgh, 490 U.S. at 414-19, 109 S.Ct. at 1881-84.
 
 
 10
 The defendants advanced two reasons for Rule 20.6(6). One purpose was rehabilitative. If publications containing the specified depictions were allowed in the cells of some inmates, they would likely be passed around and find their way into the cells of psychologically unfit inmates, interfering with their rehabilitation. In addition, defendants indicated a security goal, contending that the materials could cause some inmates to act out their sexual aggression toward other inmates or prison personnel. We believe that these objectives are legitimate. Security is clearly a valid penological goal. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); Thornburgh, 490 U.S. at 415, 109 S.Ct. at 1882. Rehabilitation is also a legitimate objective. Pell v. Procunier, 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).
 
 
 11
 As to the neutrality requirement, the Thornburgh Court made clear that it is met if the regulation furthers "an important or substantial governmental interest unrelated to the suppression of expression." Thornburgh, 490 U.S. at 415, 109 S.Ct. at 1882, quoting Procunier v. Martinez, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974). Thus, when prison administrators distinguish between publications on the basis of their potential implications for prison security and rehabilitation, as was done here, they are "neutral." 490 U.S. at 415-16, 109 S.Ct. at 1882-83.
 
 
 12
 The district court concluded that there was no rational connection between the regulation and the asserted governmental interests. We must respectfully disagree. Thornburgh recognizes that suspect publications, once in the prison, "may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct." 490 U.S. at 412, 109 S.Ct. at 1881. We hold Rule 20.6(6) rationally furthers the asserted goals of rehabilitation and security by restricting access to those materials to a reading room during certain times, thus preventing the dissemination of these materials to the general prison population. Rule 20.6(6) does not ban such materials from the prison. Under the circumstances, we think that the regulation is an acceptable way for prison officials to accommodate the inmates' First Amendment rights while advancing their legitimate interest in prison security and inmate rehabilitation.[7]
 
 
 13
 The second factor to be evaluated examines whether alternative means of exercising the right remain open to inmates. Thornburgh states that the right in question "must be viewed sensibly and expansively." Id. at 417, 109 S.Ct. at 1883. Here, a broad range of publications are permitted in the prison. Moreover, inmates are allowed to keep many sexually explicit materials in their cells. Unlike a complete prohibition, Rule 20.6(6) merely restricts the time and place of access to certain sexually explicit materials. We are cautioned that "courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation.' " Turner v. Safley, 482 U.S. 78, 90, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987), quoting Pell v. Procunier, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974). Here, as in Thornburgh, there exists other means for inmates to exercise their first amendment rights since the regulations "permit a broad range of publications to be sent, received and read." 490 U.S. at 418, 109 S.Ct. at 1884.
 
 
 14
 The third concern of the Turner- Thornburgh analysis relates to the impact that accommodation of the asserted constitutional right will have on other inmates and prison personnel. The district court found that permitting the controlled magazines in individual cells would have little impact on prison personnel or resources. The court reasoned that guards perform cell searches for other types of contraband, so they could simply make certain that these materials are not found in the cells of psychologically unfit inmates. We think that this reasoning misses the mark. Inmates are only screened for psychological fitness if they order sexually explicit publications subject to Rule 20. The record shows less than one percent of the total inmate population in the State of Iowa has requested such publications. Prison officials testified that screening all of the inmates would be expensive, create a tremendous administrative burden, and require an inordinate amount of administrative staff time. As the Turner Court instructed, we should defer to the "informed discretion of corrections officials" where accommodating the right would have a significant "ripple effect" on prison staff. 482 U.S. at 90, 107 S.Ct. at 2262.
 
 
 15
 Finally, the existence of obvious, easy alternatives which fully accommodate the inmates' rights at de minimis cost to valid penological interests may suggest that the regulation is unreasonable and an "exaggerated response" to prison concerns. The district court concluded that the rule was an exaggerated response to defendants' rehabilitation and security objectives. We disagree. Defendants have demonstrated that cell searches in this context would present administrative difficulty and cost. In addition, the alternative of a cell search does not come at a de minimis cost to the penological interests at issue. Allowing the restricted publications into individual cells, where they would likely be disseminated to other inmates, would substantially interfere with defendants' rehabilitation and security objectives. It is true that publications which depict nudity are permitted to be taken in individual cells and likely are passed within the institution. However, defendants' expert witness testified that the restricted publications, which depict sex acts, are more detrimental to rehabilitation.
 
 
 16
 Perhaps others would have chosen a different scheme to advance defendants' objectives, and it may be that Rule 20.6(6) is not the least restrictive way of doing so.[8] Under Thornburgh, however, the test is simply one of reasonableness. 490 U.S. at 410-14, 109 S.Ct. at 1879-82 (rejecting the Martinez least restrictive means test). We find Rule 20.6(6) provides a reasonable means of allowing access to sexually explicit materials while advancing the legitimate penological interests in rehabilitation and security.
 
 
 17
 Because we conclude Rule 20.6(6) is constitutional, we vacate the district court's issuance of injunctive relief.
 
 
 18
 B. Constitutionality of Rule 20.6(6) as applied
 
 
 19
 The inmates argue that even if Rule 20.6(6) is facially valid, it is nevertheless unconstitutional as applied. They contend that the reading room at Fort Madison is unreasonable because of its location adjacent to a visiting room where women and children may be present. Prison officials testified at the evidentiary hearing that this location is the one common area to which all inmates at the Fort Madison facility have access.[9] Having one reading room, rather than multiple rooms to serve different custody levels as plaintiffs request, is reasonable. One central reading room conserves needed space; all of the controlled publications are situated at one central location; and, because the visiting room staff is already in place, no staff need to be added to monitor the reading room.[10] The reading room at issue therefore is constitutional as applied.
 
 C. Attorney fees
 
 20
 The district court ordered defendants to pay plaintiffs' attorney fees pursuant to 42 U.S.C. § 1988, which authorizes such an award to a "prevailing party." Two of the defendants, James Helling and Donald Lynch, did not appeal the district court's injunction order, although they did appeal the attorney fee award. Plaintiffs argue that even if this court vacates the injunction, they are still prevailing parties as to the two defendants who did not appeal the injunction. We must respectfully disagree.
 
 
 21
 Whether a plaintiff is a prevailing party under section 1988 focuses on the result and whether it materially alters the legal relationship of the parties. Farrar v. Hobby, --- U.S. ----, ----, 113 S.Ct. 566, 571, 121 L.Ed.2d 494 (1992). The Farrar Court stated, "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Id. at 573. We think it clear that plaintiffs are not prevailing parties. Plaintiffs have obtained none of the requested relief, either injunctive or monetary, and the defendants' behavior was not modified to plaintiffs' benefit. Accordingly, we vacate the award of attorney fees as to all defendants.
 
 III.
 
 22
 In sum, we hold that Iowa Administrative Code Rule 291-20.6(6) is constitutionally valid under Turner's reasonableness standard. We therefore vacate the district court's injunction and award of attorney fees. We find no merit to the cross-appeal as to the district court's denial of issue preclusion and the refusal of the district court to award money damages for contempt.[11]
 
 
 
 [1]
 The named defendants in the suit in district court were: (a) Gary Baugher, Chair, Iowa Board of Corrections which adopted the current Rule 20; (b) Terry Branstad, Governor of Iowa; (c) Paul Grossheim, Director, Iowa Department of Corrections, who assisted in development of the current Rule 20; (d) Paul Hedgepeth, Deputy Warden of ISP; (e) James Helling, Treatment Director, ISP, part of the publication and inmate review process; (f) Charles Lee, Deputy Director of Institutions, Iowa Department of Corrections, part of the publications review process; (g) Donald Lynch, Grievance Officer at ISP who denied plaintiff Goeders' grievance regarding publications; (h) Crispus Nix, Warden, Iowa State Penitentiary, successor to David Scurr who was warden until November 20, 1981; (i) John Pascal, member of the Iowa Board of Corrections which adopted the current Rule 20; and (j) John Sissel, member of the Publications Review Board
 Two defendants did not appeal: James Helling and Donald Lynch.
 
 
 [2]
 Rule 20.6(4)(b) provided as follows:
 
 
 [20]
 6(4): Approval of the publication may be denied when it presents danger to the security or order of an institution or is detrimental to the rehabilitation of the inmates. Authorized reasons for making such a finding are that the publication:
 b. Contains material portraying bestiality, sadomasochism, child nudity, or child sexual activity, or photographic portrayal of fellatio, cunnilingus, masturbation, ejaculation, sexual intercourse, or male erection.
 Members of a publications review committee reviewed incoming publications and determined which ones violated this rule.
 
 
 [3]
 In response to the injunction, the Department of Corrections adopted an emergency rule (in September 1988), which prohibited publications depicting child sex acts, sadomasochism or bestiality. Under this rule, inmates could receive in prison essentially any publication they could legally have purchased outside of prison
 
 
 [4]
 Rule 20.6(5) provided:
 Portrayal of fellatio, cunnilingus, masturbation, ejaculation, sexual intercourse, male erection, or other sexually explicit materials will be denied to those inmates when the material is detrimental to the rehabilitation of an individual inmate, based on psychological/psychiatric recommendation.
 
 
 [5]
 Rule 20.6(6) provided:
 Publications which contain material portraying fellatio, cunnilingus, masturbation, ejaculation, sexual intercourse or male erection ... can be controlled for the security and order of the institution and to assist in enabling its control from those inmates denied access by ... 20.6(5) above. Institutional procedures shall be established for the inmate to reserve time in a designated controlled area and obtain the material for reading during specified times. The publication will be secured until the inmate makes arrangements for further review of the material. An inmate may have secured no more than ten publications at any given time, none of which are over three months from publication date or receipt, and any that are in excess of the ten limit or over three months old must be sent out of the institution at the inmate's expense, or destroyed or taken with the inmate upon release.
 
 
 [6]
 The inmates (George Segler, Troy Shearon, Kline Goeders, Kenneth Gordon, and Tyrone Pierce) filed separate complaints. These cases were all consolidated and proceeded under the name Dawson v. Scurr, case number 81-373-D. This caption and case number are from Dawson I, which as noted above, ended in the issuance of an injunction in September 1988
 
 
 [7]
 We also disagree with the district court's conclusion that the descriptions of sexually explicit material in Rule 20.6(6) were arbitrary and vague and led to inconsistent application of the rule. Thornburgh states that rules which allow broad discretion in prison authorities are appropriate where the regulations at issue concern the entry of materials into the prison. 490 U.S. at 416, 109 S.Ct. at 1883. Indeed, the Court stated that "[t]he exercise of discretion called for by these regulations may produce seeming 'inconsistencies,' but what may appear to be inconsistent results are not necessarily signs of arbitrariness or irrationality." Id. at 417 n. 15, 109 S.Ct. at 1883 n. 15. Here, it appears to us that Rule 20.6(6) is more specific, gives less deference to prison officials, and produces less inconsistency than even the regulations at issue in Thornburgh
 
 
 [8]
 Plaintiffs contend that prison officials should examine publications "as a whole" to determine whether they create security or rehabilitation problems, rather than controlling publications which may have only one offending page. The crux of this argument is that defendants could meet their rehabilitation goals in a less restrictive manner. Under Thornburgh, however, the regulation need not be the least restrictive alternative so long as it is reasonable. In our estimation, this regulation is reasonable. In addition, plaintiffs' argument ignores the fact that the depictions listed in Rule 20.6(6) are said to be particularly detrimental to rehabilitation. Rule 20.6(6) therefore appears to be a careful attempt to limit access to those depictions which are especially problematic. Cf. Thornburgh, 490 U.S. at 417 & n. 15, 109 S.Ct. at 1883 & n. 15
 
 
 [9]
 The Iowa State Penitentiary at Fort Madison contains inmates from three custody levels--maximum, medium and minimum security. Inmates from different custody levels do not associate with each other. For example, each has its own library and cafeteria. Moreover, inmates in the maximum security section are subject to a policy of controlled access, which apparently limits them from going to certain locations in the prison
 
 
 [10]
 We note as well that plaintiffs' argument that women and children can view the materials while visiting inmates seems to be exaggerated. The record suggests that the sexually explicit materials are handled discretely. Inmates are given their publications in a brown paper bag and are permitted to sit with their backs to the door that leads into the visiting room. Finally, visitors are not allowed in the reading room with the inmates
 
 
 [11]
 We agree with the magistrate judge that the original injunctive relief issued in Dawson I did not preclude promulgation of Rule 20.6(6). The version of Rule 20 at issue does not ban viewing by inmates as the earlier rule did, but simply restricts access to certain sexually explicit materials. In addition, the procedures used are significantly different under the new rule. Thus, the claims, although related, are not the same, and neither collateral estoppel nor res judicata apply. Accordingly, there is no basis to claim contempt or money damages